# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

STATE OF IDAHO; IDAHO STATE
LOTTERY,

*Defendants-cross-
plaintiffs-Appellants,*

v.

SHOSHONE-BANNOCK TRIBES, a
federally recognized Indian Tribe;
FORT HALL BUSINESS COUNCIL;
SHOSHONE-BANNOCK TRIBAL
GAMING COMMISSION,

*Plaintiff-cross-
defendants-Appellees.*

No. 04-35636

D.C. Nos.
CV-01-00052-BLW
CV-01-00171-BLW

OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Argued and Submitted
April 5, 2006—Seattle, Washington

Filed October 11, 2006

Before: William C. Canby, Jr., Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Canby

## SUMMARY

### Government Law/Native Americans

The court of appeals affirmed a judgment of the district court. The court held that the Shoshone-Bannock Tribes (Tribes) were entitled to a mandatory amendment of their tribal-state gaming compact (Compact) to authorize tribal video gaming after other Indian tribes took advantage of a voter initiative authorizing such gaming, but that the Tribes were not subject to limitations on numbers of machines or required educational payments that were imposed upon the other Indian tribes.

Appellant Idaho was negotiating the Compact for class III gaming with appellees the Tribes. When Idaho and the Tribes were unable to compromise on the scope of permissible class III gaming, they each sought a declaratory judgment in the district court to determine that issue, and the cases were consolidated. The Compact provided that in the event any other Indian tribe was permitted to conduct any class III games in Idaho, the Compact "shall be amended to permit the Tribes to conduct those same additional games." The Compact did not specify a limit on the numbers of gaming machines, nor did it set an expiration date for the Compact or any of its provisions. While the case was pending, Idaho voters adopted an initiative that added two sections to the Idaho Code allowing Indian tribes to conduct gaming using "tribal video gaming machines" pursuant to gaming compacts permitting their use, or to amend their compacts to permit such use. The initiative also limited the number and annual increase of gaming machines, and required a contribution of a certain percentage of the annual net gaming income to local educational programs and schools. The Coeur d'Alene, Kootenai, and Nez Perce Tribes employed the amendment procedure authorized by the initiative, and were granted the right to operate gaming machines, subject to the statutory limitations on numbers and

required school payments. The district court entered summary judgment in favor of the Tribes, ruling that they could operate tribal video gaming machines without renegotiating their Compact to limit the numbers of games and to require school payments.

Idaho appealed.

[1] The plain language of the Compact authorized the Tribes to operate video gaming machines after the three other tribes were permitted to do so in Idaho. [2] An amendment of the Compact was required. [3] However, renegotiation of the Compact was not required. The ordinary meaning of the Compact provision made the amendment of the Compact mandatory and left nothing to negotiate after the other tribes were allowed to operate gaming machines. [4] Further, the plain meaning of "same additional games" in the Compact referred to the games themselves and not the number of machines. This ordinary meaning did not encompass a limitation on numbers or of increases in numbers of gaming machines. [5] The quantity and growth restrictions on tribal video gaming machines to which the other tribes became subject were not unilaterally imposed on those tribes, but rather were negotiated in return for benefits. The Tribes, however, relied on their Compact's existing provisions to confer the necessary permission to operate the video gaming machines. The fact that the Tribes were in a technically better position than the other tribes was purely a function of the terms of their Compact with Idaho. [6] As with the limitation on numbers of machines, there was no justification for reading a school payment requirement into the plain meaning of "additional games" in the Tribes' Compact. The district court's judgment had to be affirmed.

## COUNSEL

Michael S. Gilmore, Deputy Attorney General, Boise, Idaho, for the defendants-cross-plaintiffs-appellants.

Scott D. Crowell, Kirkland, Washington, for the plaintiff-cross-defendants-appellees.

## OPINION

CANBY, Circuit Judge:

Idaho appeals the district court's grant of summary judgment to the Shoshone-Bannock Tribes ("Tribes")[1] in their declaratory judgment action regarding the types of games they may offer pursuant to their tribal-state gaming Compact ("Compact") with Idaho. The court ruled that the Tribes could operate tribal video gaming machines without renegotiating their Compact to limit the numbers of games and to require payments by the Tribes to local educational programs and schools. We affirm the district court's grant of summary judgment to the Tribes.

## BACKGROUND

### A.   The IGRA and the Tribes' Gaming Compact With Idaho

The Indian Gaming Regulatory Act ("IGRA") provides a comprehensive framework for regulating gaming on Indian land. *See* 25 U.S.C. §§ 2701-2721. The IGRA divides tribal gaming into three classes: I, II and III. The parties agree that operation of the tribal video gaming machines at issue in this case constitutes class III gaming. Class III gaming may be conducted on Indian lands if it is: (1) authorized by the tribe seeking to conduct the gaming; (2) located in a State which does not bar such gaming; and (3) "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State . . . ." 25 U.S.C. § 2710(d)(1).

---

[1]We refer to the Shoshone-Bannock Tribes by their plural name, but they constitute a single federally recognized Indian tribe.

In 2000, the Tribes and Idaho entered into a gaming Compact. *See* 65 Fed. Reg. 54541-03 (Sept. 8, 2000) (approval of the Compact by the Assistant Secretary of the Interior for Indian Affairs). The parties intended the Compact to "govern the licensing, regulation and operation of Class III gaming conducted by the Tribes on Indian Lands located within [Idaho]." Compact § 3(k). The Compact authorizes the Tribes to conduct any class III gaming activity "that the State of Idaho 'permits for any purpose by any person, organization, or entity,' as the phrase is interpreted in the [IGRA]." Compact § 4(a). Remarkably, the Compact did not specify a limit on the numbers of gaming machines, nor did it specify a term of the Compact's duration.

When the Compact was negotiated, the Tribes and State could not agree on what types of class III games Idaho allowed others to conduct. Idaho's position was that "the electronic gaming currently conducted by the Tribes in Idaho is an imitation of casino games and prohibited under Idaho and federal law." The Tribes' position was that Idaho allowed all class III gaming except sports betting.

Unable to compromise on the scope of permissible class III gaming, the parties agreed to seek a declaratory judgment to determine which class III games the Compact authorized. The Tribes and State each filed suit in the district court seeking declaratory relief. The court consolidated the cases into the present action.

## B.  Proposition One

While this case was pending in the district court, the voters of Idaho adopted an initiative called Proposition One that authorized Indian tribes to conduct gaming using "tribal video gaming machines." Section Two of Proposition One stated that the Indian tribes suffer from disproportionate unemployment and poverty and that recently tribes have "proceeded in good faith to make major investments in Indian gaming facili-

ties, and [that] those facilities have finally enabled the tribes to reduce unemployment and welfare and improve living conditions on their reservations." Proposition One informed voters about the disagreement between the tribes and Idaho regarding video gaming machines.[2] The voters approved Proposition One on November 5, 2002.

Proposition One added two sections to the Idaho Code, 67 429B and 67-429C. Section 429B allows "Indian tribes . . . to conduct gaming using tribal video gaming machines pursuant to state-tribal gaming compacts which specifically permit their use." Idaho Code § 67-429B(1). Section 429C authorizes tribes to amend their gaming compacts to permit the use of tribal video gaming machines. It also provides that the gaming machines authorized by such an amendment are limited to the number currently operated by the affected tribe plus 25%, and that no annual increase in numbers may exceed 5% of the number of gaming machines possessed on January 1, 2002. Idaho Code § 67-429C(1)(b). In addition, the statute provided that tribes adopting the prescribed amendments agreed to contribute 5% of the annual net gaming income to local educational programs and schools. Idaho Code § 67-429C(1)(c).

---

[2]Section Two of Proposition One presented the dispute as follows:

Due to differences in opinion over the interpretation of Idaho law, . . . tribes face legal uncertainties about the types of gaming machines they can operate on Indian lands.

. . .

Attempts by the tribes and the governor to resolve these legal uncertainties have failed, jeopardizing the future of tribally-funded education, health care, and social service programs. Therefore, the citizens of Idaho desire to secure the future of tribal gaming on Indian lands in Idaho themselves through this ballot measure.

This ballot measure clarifies that it is the public policy of . . . Idaho that Indian tribes can continue to operate the types of lottery-style gaming machines currently used at Indian gaming facilities on Idaho reservations under the terms of this act.

Shortly after Proposition One became law, the Coeur d'Alene, Kootenai, and Nez Perce Tribes employed the amendment procedure in Idaho Code section 67-429C(2) to amend their compacts with Idaho by incorporating the terms of 67-429C(1). The amendments granted them the right to operate tribal video gaming machines, subject to the statute's limitations of numbers and requirements of school payments.

## C. District Court Ruling

The voters' approval of Proposition One narrowed the dispute before the district court by clarifying Idaho's public policy regarding tribal video gaming machines. The remaining issue before the district court was whether the existing Compact between the Tribes and Idaho must be renegotiated before the Tribes could operate tribal video gaming machines. The court held that "the Compact does not require the Tribe[s] and the State of Idaho to enter into renegotiations before the Tribe[s are] authorized to conduct gaming using tribal video gaming machines." Further, the court ordered the parties to "adopt a brief written amendment clarifying that the Tribe is authorized to operate 'tribal video gaming machines' as that term is defined in [Idaho Code] § 67-429B." The court found "[t]hat the machines used by the Shoshone-Bannock Tribes in their gaming operation in May 2004 are tribal video gaming machines . . . ."

## DISCUSSION

We review de novo a district court's grant of summary judgment. *Sierra Club v. Babbitt*, 65 F.3d 1502, 1507 (9th Cir. 1995). The Compact states that it is to be "construed in accordance with the laws of the United States." Compact § 27. We apply general principles of contract interpretation to construe a contract governed by federal law. *See Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989). The parties here rely on Idaho contract law, however, and we accept that practice because we discern, and the

parties note, no difference between Idaho and federal contract law.

## I.   Authorization of Tribal Video Gaming Machines

The Compact has two, somewhat differing provisions addressing the permissible scope of the Tribes' class III gaming.

Section 4, "Authorized Class III Gaming," provides:

> [T]he Tribes may operate in its gaming facilities located on Indian Lands, any gaming activity that the State of Idaho 'permits for any purposes by any person, organization, or entity,' as the phrase is interpreted in [the IGRA]. The Tribes may not operate any other form of Class III gaming activity.

Section 24.d, "Games Conducted by Other Tribes," states:

> In the event any other Indian tribe is permitted by compact or final court decision to conduct any Class III games in Idaho in addition to those games permitted by this Compact, this Compact shall be amended to permit the Tribes to conduct those same additional games . . . .

[1] The plain language of section 4 authorizes the Tribes to operate video gaming machines because Idaho permits three other tribes to operate tribal video gaming machines in the state. An Indian tribe is an "entity" under the IGRA. *Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 731 (9th Cir. 2003) (interpreting 25 U.S.C. § 2710(d)(1)(B)). The Coeur d'Alene, Kootenai, and the Nez Perce Tribes all legally operate tribal video gaming machines[3] in Idaho pursuant to

---

[3] A tribal video gaming machine . . . is not activated by a handle or lever, does not dispense coins, currency, tokens, or chips, and performs only the following functions:

Idaho Code section 67-429B. If section 4 of the Compact stood alone, authorization of the Tribes to conduct video gaming would appear to be automatic, because section 4 does not mention any requirement of an amendment of the Compact.

[2] The State relies, however, on section 24.d, which does contemplate an amendment to the Compact to permit gaming conducted by other tribes. We agree in part with the State: section 24.d is applicable here. Section 24.d is more specific in its application to gaming by other tribes than is section 4.[4] Specific terms of a contract govern inconsistent, more general terms. *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885,

---

(a) Accepts currency or other representative of value to qualify a player to participate in one or more games;

(b) Dispenses, at the player's request, a cash out ticket that has printed upon it the game identifier and the player's credit balance;

(c) Shows on a video screen or other electronic display, rather than on a paper ticket, the results of each game played;

(d) Shows on a video screen or other electronic display, in an area separate from the game results, the player's credit balance;

(e) Selects randomly, by computer, numbers or symbols to determine game results; and

(f) Maintains the integrity of the operations of the terminal.

Idaho Code § 67-429B(1).

[4]The Tribes contend that section 24.d was added to the Compact only because it was not clear at the time of the Compact's negotiation that other Indian gaming was covered by section 4 as gaming Idaho permitted "for any purposes by any person, organization or entity." Our subsequent decision in *Artichoke Joe's*, 353 F.3d at 731, made clear that tribes were "entities" within the meaning of this language. According to the Tribes, that decision makes the automatic provision of section 4 applicable here and section 24.d becomes surplusage. We agree with the district court, however, that we must interpret each section according to the intent of the parties when the two sections were negotiated.

891 (9th Cir. 2003) (per curiam); *see also* Restatement (Second) of Contracts § 203 (1981). We agree with the district court, therefore, that an amendment of the Tribes' Compact is required for the Tribes to be able to operate their video gaming machines as a result of the permitted operation of such games by other tribes in Idaho.

[3] We reject, however, the State's contention that section 24.d requires renegotiation of the Tribes' Compact in order to arrive at the necessary amendment. Section 24.d provides that, when any other tribe is permitted by compact to conduct class III games not permitted by the Tribes' Compact, the Compact "*shall be amended* to permit the Tribes to conduct those same additional games . . . ." (Emphasis added). This plain language leaves no room for negotiation; it mandates an amendment to permit one thing — the operation of the same games conducted by other tribes under their compacts. Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1549 (9th Cir. 1990) (amended opinion); *City of Idaho Falls v. Home Indem. Co.*, 888 P.2d 383, 386 (Idaho 1995). The ordinary meaning of section 24.d makes the amendment of the Compact mandatory and leaves nothing to negotiate.

The other provisions of the Compact are consistent with our conclusion that section 24.d amendments are mandated and do not reopen the Compact to renegotiation. These provisions contain no substantive requirements for amendments. The procedure for amending the Compact is set forth in sections 23-25. Section 25 provides that the Compact can be amended only in writing by the State and the Tribes "as provided in Section 23." Section 23 states that "all notices required or authorized to be served under this Compact shall be served" upon the Idaho State Gaming Agency and the Chairman of the Tribes' Business Council. Section 23 does

not outline any other amendment procedures. Section 24.b[5] concerns renegotiation and states that either Idaho or the Tribes may request renegotiation, but the Compact remains in effect until the renegotiation is complete or the Compact is replaced.

The Compact contains no sunset provision and sets no expiration date for the Compact or any of its provisions. Neither party can unilaterally terminate the Compact. Nothing in the Compact indicates that renegotiation is required before an amendment is adopted pursuant to section 24.d. If Idaho wanted to condition section 24.d amendments on renegotiating the Compact, it should have bargained for that term as it appears to have done with regard to section 11.[6] Because the Compact is clear, we do not need to consider the other tribes' gaming compacts to evidence the intent of the parties to this Compact that a section 24.d amendment does not require renegotiation of the Compact.

## II.   The Limitations on Numbers of Gaming Machines and the School Payments in Idaho Code § 67-429C Do Not Apply To The Tribes

Idaho argues that section 24.d's language referring to the games permitted by other tribes' compacts requires that the amendment mandated by section 24.d include the limitations in Idaho Code § 67-429C because the other Idaho tribes have amended their gaming compacts to include those limitations.[7]

---

[5]Nothing in sections 24.a or 24.c is relevant to this dispute.

[6]Section 11 of the Compact is titled "Management Contract" and provides that if "the Tribes choose to engage an outside management company, the Tribes and the State *shall negotiate amendments* to this Compact . . . ." (Emphasis added).

[7]The other tribes have assented to Proposition One's recommended terms requiring tribes that operate video gaming machines to: (1) limit the number of the machines to 5% annual growth and 25% decennial growth from a January 1, 2002 baseline; and (2) require the tribes to contribute 5% of their annual net gaming income to local educational programs on or near the reservation. *See* Idaho Code § 67-429C(1)(b)-(c).

Specifically, Idaho asks this Court to define "those same additional games" in section 24.d to include the limitations on numbers of gaming machines and the requirement of school payments that the other tribes have adopted in return for authorization to operate video gaming machines.

[4] We reject the State's contention that a limitation on the number of gaming machines necessarily inheres in the Compact's language entitling the Tribes "to conduct those same additional games." The plain meaning of "same additional games" refers to the games themselves and not the number of machines. The Idaho Code itself reflects this distinction. A tribal video gaming machine is defined by its operating mechanism. *See* Idaho Code § 67-429B(1). No quantity restriction is included in the term "tribal video gaming machine." Instead, the statute's quantity and growth restrictions on tribal video gaming machines, proposed for amended compacts, are located in a different section from the one used to define the gaming machines. *Compare* § 67-429B (defining tribal video gaming machines) *with* § 67-429C(1)(b) (recommending that tribes adopt a quantity and annual growth restriction on the number of tribal video gaming machines). Thus, the state statutory scheme buttresses the conclusion that is apparent from the words of section 24.d of the Compact itself: the Compact provides that the Tribes will be permitted (by mandatory amendment) to conduct the *games* permitted other tribes. The ordinary meaning of "games" does not encompass a limitation on numbers or of increases in numbers of gaming machines.

[5] The quantity and growth restrictions on tribal video gaming machines to which the other tribes became subject were not unilaterally imposed on those tribes. Section 67-429C provided that tribes with existing contracts "may" amend their compacts in the manner offered by the statute. The other tribes agreed to accept the statutory package of amendments in return for benefits offered by those amendments that were not included in their existing compacts. The Shoshone-Bannock Tribes, however, did not agree to amend

their Compact and chose instead to rely on their Compact's existing provisions to confer the necessary permission to operate the video gaming machines. This the Tribes were entitled to do, and they may not be subjected to the number limitations of the state statutory package that would have applied had the Tribes agreed to amend under section 67-429C. The fact that the Tribes may now be in a technically better position than the other tribes is purely a function of the terms of the Compact that Idaho and the Tribes voluntarily entered into.

[6] The Tribes' case is even stronger with regard to the payments to educational programs and schools. As with the limitation on numbers of machines, there is no justification for reading a school payment requirement into the plain meaning of "additional games." But in addition, section 19 of the Compact prohibits Idaho from imposing its desired school payments on the Tribes' gaming operation. Section 19.b bars the State from "impos[ing] any tax, fee, charge or assessment upon the Tribes or the Gaming operation." It prohibits Idaho from collecting, and the Tribes from paying, "any Idaho tax or contribution in lieu of taxes or fees on or measured by gaming transactions, gaming devices permitted under this Compact, gross or net Gaming revenues, or the Tribes' net income." Idaho's desire to impose a requirement of educational and school payments on the Tribes' video gaming operations is a "tax or contribution" that is "measured by . . . net Gaming revenues." Thus, section 19.b precludes interpreting section 24.d's "same additional games" language to authorize unilateral imposition of school payments on the Tribes.

It is true that the prohibition on taxation in section 19.b echoes a similar prohibition in the IGRA. *See* 25 U.S.C. § 2710(d)(4). It is also true that, despite this statutory prohibition, states and tribes have negotiated compacts that provided for payments by the tribes to the states. *See, e.g., In re Indian Gaming Related Cases*, 331 F.3d 1094, 1111-14 (9th Cir. 2003). The theory on which such payments were allowed,

however, was that the parties *negotiated* a bargain permitting such payments in return for meaningful concessions from the state (such as a conferred monopoly or other benefits). *See id.* Although the state did not have *authority* to exact such payments, it could bargain to receive them in exchange for a quid pro quo conferred in the compact. *See id.*

Nothing of the sort has occurred here. The Compact as negotiated between the Tribes and Idaho retained the prohibition against taxes or payments in section 19.d, and the Tribes did not bargain away their immunity from such taxes or payments in the Compact. The fact that other tribes have accepted a package of benefits and burdens when they voluntarily amended their compacts does not change the terms of the Compact between the Tribes and Idaho. That Compact prohibits the imposition of the payments that Idaho would now require.

## CONCLUSION

The Tribes are entitled to a mandatory amendment of the Compact stating that they are authorized to conduct tribal video gaming, as the other tribes have been permitted to do. The limitations on numbers of machines and the requirement of educational payments set forth in Idaho Code section 67-429C do not apply to the Tribes or their gaming operation. Although Idaho may seek to renegotiate the Compact under section 23 at any time, it may not force the Tribes to the negotiating table or unilaterally terminate the Compact. The Tribes are fully authorized to use tribal video gaming machines free from the requirements of Idaho Code section 67-429C unless the Tribes agree to a renegotiated or replacement Compact that contains those restrictions. The district court's judgment accordingly is

**AFFIRMED**.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.

INTERNAL USE ONLY: Proceedings include all events.
04-35636 Shoshone-Bannock, et al v. State of Idaho, et al

STATE OF IDAHO
    Defendant-cross-plaintiff
- Appellant

David G. High, DAG
FAX        208
208/334-2216
[COR dag]
Michael S. Gilmore, Esq.
FAX 208/334-2830
208/334-2400
[COR LD NTC dag]
Jeremy Chou, Esq.
FAX 208/334-2208
208/334-2400
[COR dag]
AGID - OFFICE OF THE IDAHO
ATTORNEY GENERAL (BOISE)
P.O. Box 83720
Boise, ID 83720-0010

IDAHO STATE LOTTERY
    Defendant-cross-plaintiff
- Appellant

David G. High, DAG
(See above)
[COR dag]
Michael S. Gilmore, Esq.
(See above)
[COR LD NTC dag]
Jeremy Chou, Esq.
(See above)
[COR dag]

    v.

SHOSHONE-BANNOCK TRIBES, a
federally recognized Indian
Tribe
    Plaintiff-cross-defendant
- Appellee

Scott D. Crowell, Esq.
FAX 425/828-8978
425/828-9070
[COR LD NTC ret]
1670 10th Street, West
Kirkland, WA 98033

William F. Bacon, Esq.
208/238-3829
[COR ret]
Brandelle Whitworth, Esq.
FAX 208/239-9276
208/478-3815
[COR LD NTC ret]
SHOSHONE-BANNOCK TRIBES
TRIAL ATTORNEYS OFFICE
P O Box 306
Fort Hall, ID 83203

FORT HALL BUSINESS COUNCIL
    Plaintiff-cross-defendant
- Appellee

Scott D. Crowell, Esq.
(See above)
[COR LD NTC ret]

William F. Bacon, Esq.

INTERNAL USE ONLY: Proceedings include all events.
04-35636 Shoshone-Bannock, et al v. State of Idaho, et al

                              (See above)
                              [COR ret]
                              Brandelle Whitworth, Esq.
                              (See above)
                              [COR LD NTC ret]

SHOSHONE-BANNOCK TRIBAL GAMING       Scott D. Crowell, Esq.
COMMISSION                           (See above)
     Plaintiff-cross-defendant       [COR LD NTC ret]
- Appellee
                              William F. Bacon, Esq.
                              (See above)
                              [COR ret]
                              Brandelle Whitworth, Esq.
                              (See above)
                              [COR LD NTC ret]